IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| BRANDON N. MOODY,<br><br>    Petitioner,<br><br> v.<br><br>JOHN E. WETZEL, Secretary of the PADOC; THE DISTRICT ATTORNEY OF THE COUNTY OF PHILADELPHIA; and THE ATTORNEY GENERAL OF THE STATE OF PENNSYLVANIA,<br><br>    Respondents. | CIVIL ACTION NO. 20-3258 |

## ORDER

**AND NOW**, this 16th day of July, 2021, after considering the petition for a writ of habeas corpus under 28 U.S.C. § 2254 filed by the *pro se* petitioner, Brandon N. Moody ("Moody") (Doc. No. 2), Moody's "Motion for a Stay and Abeyance to Present Claims in State Court for the Purpose of Appropriate Exhaustion" (Doc. No. 10), the respondents' response to the motion to stay and abey (Doc. No. 22), the report and recommendation filed by United States Magistrate Judge Elizabeth T. Hey (Doc. No. 23), Moody's "Motion to Direct Respondents to Use an Alternate Service Process Via Hand Delivery by PA Doc. Officials" (Doc. No. 25), and Moody's "Nunc Pro Tunc Objection to Magistrate District Judge's May 7, 2021 Report and Recommendation Regarding Specific Portions of Proposed Factual Findings Pursuant to Local Rule of Civ. P. 72.1IV and Fed. R. Civ. P. 60(e)" (Doc. No. 26), it is hereby **ORDERED** as follows:

  1. Moody's objections to the report and recommendation (Doc. No. 26) are **SUSTAINED IN PART** and **OVERRULED IN PART**;[1]

2. The Honorable Elizabeth T. Hey's report and recommendation (Doc. No. 23) is **APPROVED** and **ADOPTED**, except as **MODIFIED** by the court sustaining certain objections referenced in footnote 1 of this order;

3. Moody's motion to stay and abey (Doc. No. 10) is **GRANTED**. Consideration of the petition for a writ of habeas corpus (Doc. No. 2) is **STAYED** to allow Moody to exhaust the claim now pending before the PCRA court;

4. Moody and counsel for the respondents are **DIRECTED** to **NOTIFY** this court within **thirty (30) days** of the conclusion of his PCRA proceedings and Moody is to also **NOTIFY** this court if he seeks to pursue his habeas petition;

5. Moody's "Motion to Direct Respondents to Use an Alternative Service Process Via Hand Delivery by PA DOC Officials" (Doc. No. 25) is **DENIED**;[2] and

6. There has been no substantial showing of the denial of a constitutional right and, as such, the court will not issue a certificate of appealability.

BY THE COURT:


/s/ *Edward G. Smith*
EDWARD G. SMITH, J.

---

[1] As a preliminary matter, the court must first address the timeliness of Moody's objections to the report and recommendation. In general, a party has "fourteen days after being served with a copy" of the report and recommendation to file objections to it. 28 U.S.C. § 636(b)(1). Here, as Moody is incarcerated, the clerk of court mailed him a copy of the report and recommendation. *See* Unnumbered Docket Entry Between Doc. Nos. 23 and 24 (showing that clerk of court mailed report and recommendation to Moody on May 10, 2021). Ordinarily, if service is effected by mail, "service is complete upon mailing." Fed. R. Civ. P. 5(b)(2)(C). In addition, a party served by mail is entitled to three extra days to act after the period to act would have otherwise expired. *See* Fed. R. Civ. P. 6(d) ("When a party may or must act within a specified time after being served and service is made under Rule 5(b)(2)(C) (mail) . . ., 3 days are added after the period would otherwise expire under Rule 6(a)."). With regard to these three extra days, they are provided to the recipient of a document by mail to attempt to account for transmission times. *See generally* 4B Wright & Miller, Fed. Prac. & Proc. § 1171 (4th ed.) ("Providing additional time when the triggering paper is served by mail is designed to address the fact that, under Rule 5, service is complete upon the mailing itself, not actual receipt. The additional three days provided to the party being served is thought to represent a reasonable transmission

time, and a fair compromise between the harshness of measuring time strictly from the date of mailing and the indefiniteness of attempting to measure from the date of receipt, which in many cases would be unverifiable.").

In this case, because the clerk of court did not mail the report and recommendation to Moody until May 10, 2021, he would have had 14 days, *i.e.* until Monday, May 24, 2021 under section 636(b) to file objections. Also, as the clerk's office served the report and recommendation upon Moody by mail, he actually had until Thursday, May 27, 2021, to file his objections.

Moody asserts that he provided his objections to prison officials for mailing to counsel for the respondents on June 3, 2021. *See* Nunc Pro Tunc Obj. to Mag. J. May 7, 2021 R. & R. Regarding Specific Portions of Proposed Factual Findings Pursuant to Local Rule of Civ. P. 72.1IV and Fed. R. Civ. P. 60(e) ("Objs.") at ECF p. 10, Doc. No. 26 (attaching certificate of service with declaration). The court also notes that the envelope containing the objections contains a postmark of June 3, 2021. *See id.* at ECF p. 11. In light of this information and pursuant to the prisoner mailbox rule, the court considers June 3, 2021, as the filing date for the objections. *See Houston v. Lack*, 487 U.S. 266, 275–76 (1988) (concluding that *pro se* prisoner's petition is deemed filed "at the time petitioner delivered it to the prison authorities for forwarding to the court clerk").

Even with June 3, 2021 as the filing date, the instant objections are untimely filed as the clerk of court did not receive them until well beyond May 27, 2021. Moody recognizes this untimeliness, but he argues that the court should consider the objections to be timely filed because he did not receive the report and recommendation until May 24, 2021. *See* Objs. at ECF pp. 3–4, Doc. No. 26. He then claims that the court should consider June 7, 2021, to be the deadline due to the delay in him actually receiving the report and recommendation, as he believes that the court should run the 14-day period from May 24, 2021. *See id.* at ECF p. 4. In support of this argument, he cites to *Poaches v. Camaron*, Civ. A. No. 14-5856, 2015 WL 1725768 (E.D. Pa. Apr. 15, 2015) and *Hrusovsky v. Harlow*, Civ. A. No. 08-147, 2009 WL 89568 (E.D. Pa. Jan. 12, 2009). *See id.*

With regard to these cases, *Poaches* does not provide support for Moody's contention because in that case, the clerk's office did not mail the report and recommendation until a week after it was issued. 2015 WL 1725768, at *1 (indicating that letter containing report and recommendation was "not postmarked until February 25, 2015, or one week after Judge Perkin issued his R &R"). Taking February 25, 2015 as the start date for the time to file objections, as the petitioner's objections were postmarked March 11, 2015, they would have been "filed" under the prisoner mailbox rule well within the 17-day period to file objections. *See id.*

As for *Hrusovsky*, that case would seemingly provide support for Moody's claim. In *Hrusovsky*, the court noted that although the petitioner appeared to untimely file objections to a report and recommendation, the petitioner informed the court that he had not received the report and recommendation until December 3, 2008, and that he mailed his objections to the clerk of court on December 11, 2008. *See* 2009 WL 89568, at *1. The court, "[a]ccepting petitioner's assertions [regarding the timing of receipt of the report and recommendation and the mailing of objections] as correct and applying the prison mailbox rule," determined that the objections were timely because they were filed within ten days after he was served with the report and recommendation. *See id.* Thus, the court considered the objections *nunc pro tunc*. *See id.*

Although *Hrusovsky* has a very similar factual scenario to that presented here, the court there appears to have not referenced that service by mail is effected upon mailing, not upon receipt of the mailed document. *See* Fed. R. Civ. P. 5(b)(2)(C). As such, this court will not follow *Hrusovsky* in treating the objections as being timely filed in light of their being filed within 14 days after Moody received the report and recommendation in the mail. Nevertheless, because Moody is a *pro se* litigant, the court has construed the objections as containing a request for an extension of time to file objections (which is the path Moody should have taken in this case upon receiving the report and recommendation at the end of the 14-day period). To grant this extension request, the court would need to find that Moody has demonstrated excusable neglect for not filing timely objections because he did not submit the extension request until **after** the time for him to file objections expired. *Compare* Fed. R. Civ. P. 6(b)(1)(A) (providing that court can extend time to act "for good cause . . . if the court acts, or if a request is made, **before** the original time or its extension expires" (emphasis added)), *with* Fed. R. Civ. P. 6(b)(1)(B) (providing that court can extend time to act "for good cause . . . on motion made **after** the time has expired if the party failed to act because of excusable neglect" (emphasis added)).

To determine whether Moody has shown excusable neglect for failing to timely seek an extension of time to file objections, the court must equitably consider four factors: (1) the danger of prejudice to the non-moving party; (2) the length of the delay and its potential impact on judicial proceedings; (3) the reason for the delay, including whether it was within the reasonable control of the movant; and (4) whether the movant acted in good faith. *See Pioneer Inv. Servs. Co. v. Brunswick Assocs. Ltd. P'ship*, 507 U.S. 380, 395 (1993) (citation omitted); *see also In re O'Brien Env't Energy, Inc.*, 188 F.3d 116, 125 n.7 (3d Cir. 1999) (concluding that *Pioneer* factors apply to all excusable neglect inquires arising under Federal Rules of Civil Procedure). Here, a balancing of these *Pioneer* factors supports granting

the extension. First, the court can discern no prejudice to the respondents by granting an extension especially as they have not objected to the ultimate conclusion/recommendation in the report and recommendation and the objections do not affect that conclusion/recommendation. Second, the length of the delay was minimal and has no impact on these judicial proceedings. Third, the reason for the delay mostly involves the delay in the mail being delivered to Moody at the prison, which was not within Moody's control. Finally, it appears that Moody has acted in good faith. Accordingly, the court will grant the implied request for an extension of time to file objections and will consider the instant objections as being timely filed.

After concluding that the objections are timely, the court now turns to the substance of the objections. In analyzing the objections, the court conducts a *de novo* review and determination of the portions of the report and recommendation by the magistrate judge to which there are objections. *See* 28 U.S.C. § 636(b)(1) ("A judge of the court shall make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made."); *see also* E.D. Pa. Loc. R. Civ. P. 72.1(IV)(b) (providing requirements for filing objections to magistrate judge's proposed findings, recommendations, or report).

Here, Moody has not objected to Judge Hey's ultimate recommendation, which is that the court grant his motion to stay and abey these proceedings while he exhausts a particular claim in the state courts. Instead, he has objected to certain statements in the report and recommendation where, *inter alia*, Judge Hey described certain aspects of his claims in his habeas petition and even her description of the claim he is raising in the state courts. More specifically, Moody asserts the following objections: (1) Judge Hey erred in failing to note that he has raised a habeas claim regarding the prosecution violating his "post-arrest silence," Objs. at ECF p. 4; (2) Judge Hey erred in noting that he did not include the claim he is currently asserting in a PCRA petition in the state court in his first PCRA petition, *see id.* at ECF p. 5; (3) Judge Hey erred in identifying the precise claim he is currently raising in the state court, *see id.* at ECF pp. 5–6; and (4) Judge Hey incorrectly noted that he claimed that certain evidentiary material was taken from his prison cell during the pendency of his first PCRA petition, *see id.* at ECF pp. 6–7. The court will address each objection in turn.

Concerning the first objection, Judge Hey, in the report and recommendation, recited the claims Moody was asserting in his habeas petition. *See* R. & R. at ECF pp. 4–5. Judge Hey described Moody's third claim as: "Prosecutorial misconduct for making impermissible comments in opening, commenting on Moody's pre-arrest silence, and eliciting testimony regarding Moody's prior bad acts." *Id.* at ECF p. 4. Moody claims that this description omits the fact that he also raised a claim regarding the prosecution violating his "post-arrest silence." Objs. at ECF p. 4. Moody notes that in "Ground Three" of his habeas petition, he asserts that "[d]uring cross examination of Mr. Moody the prosecutor made several references encroaching upon his pre-arrest silence that encompassed his post-arrest silence . . ., and continued to do so in his closing that encompassed [Moody's co-defendant's] silence." *Id.*; Pet. Under 28 U.S.C. § 2254 for Writ of Habeas Corpus by a Person in State Custody ("Pet." at ECF p. 9, Doc. No. 2 (internal citation omitted).

While Moody references post-arrest silence in his habeas petition, it surely is not abundantly clear from the language he uses here that he is asserting that the prosecutor violated his "post-arrest silence." It also does not help that Moody has yet to file a memorandum of law in support of his claim to further flesh out what he means here. Nonetheless, as Judge Hey's recitation of his habeas claims has no bearing on her recommendation in this case and was included as only part of the procedural history in this matter, the court will overrule the objection with the confidence that when this matter eventually returns, Judge Hey (or any other magistrate judge assigned to this matter) will fully address all claims properly raised. And, if somehow that does not happen, Moody will have the opportunity to object to the report and recommendation and explain to this court that an error occurred.

Regarding the second objection, Judge Hey explained in her report that "[i]t appears that Moody is currently attempting to exhaust a claim in the state court that is included in his habeas petition, but not contained in his direct appeal or first PCRA *appeal*." R. & R. at ECF p. 6. Moody claims that although Judge Hey correctly points out that he raised this claim in his habeas petition, she incorrectly stated that he did not include it in his first PCRA. *See* Objs. at ECF p. 5. Instead, he explains that he raised an age-based challenge to the mandatory sentencing scheme in his proposed second amended PCRA petition which was attached to "Mr. Moody's 907 Response" and in a response by "attorney Gary S. Server" in a response he filed to the 907 Response. *See id.* Moody also indicates that neither the trial court nor the appellate court addressed this claim, but he asserts that the claim is exhausted because the state courts had the opportunity to address it but failed to do so. *See id.*

The court will overrule this objection as Judge Hey's statement is not, as Moody contends, inaccurate. Judge Hey states that he did not contain the claim in his direct appeal or first PCRA *appeal*. Judge Hey does not state that he did not include the claim in his first PCRA petition or in some other document during that proceeding. Thus, Moody's explanation as to what purportedly happened before the Court of Common Pleas has no bearing on Judge Hey's statement. Additionally, Moody does not mention in his objections that he included it in his statement of matters

4

complained of on appeal from the denial of his first PCRA petition or in his appellate brief. Instead, he focuses on what happened before the Court of Common Pleas. As such, there is nothing in the record to contradict Judge Hey's statement that he did not include the claim as part of his PCRA appeal. And, even if he did, the court notes that Judge Hey's statement has no bearing on the outcome of the court's resolution of the objections or review of the report and recommendation.

As for the third objection, Moody raises an issue with how Judge Hey characterized the claim he is raising in his new PCRA petition. In the report and recommendation, Judge Hey identified the claim as "a claim of ineffectiveness for failing to develop an age-based challenge to his sentence." R. & R. at ECF p. 6. Unfortunately, Moody's objection to this characterization is difficult to understand. He asserts that the claim he previously raised in his first PCRA petition was one relying on

> whether or not the reports on adolescent brain development addressed the period of late adolescents (18-20's), when Mr. Moody was tried (2008) and therein convicted, establishing they had diminished culpability that warranted consideration for sentencing purposes; and if so, was counsel ineffective for not pursuing this evidence to challenge the mandatory life without parole sentencing scheme as it relates to Mr. Moody who was 18 yrs. of age when the incident he's incarcerated for occurred.

Objs. at ECF pp. 5–6. He then explains that the claim he is raising now in the state court is as follows:

> [T]he crux of the claim was initiated by testimonial evidence presented by two leading experts in the field of neuroscience and adolescent brain development who had declared in less than a month of one another, that new developments in neuroscience made it undisputable that late adolescents (18-20's) shared characteristics of diminished culpability comparable to their juvenile counterparts whom received relief from the harshest penalties imposed by the States.

*Id.* at ECF p. 6 (citation omitted). He then asserts that his prior ineffective assistance of counsel claim is different from this new PCRA claim because:

> If what was relayed by the experts is true, i.e., the neuroscience that was used to conduct the studies to make the determination about late adolescents did not come into fruition until after *Miller v. Alabama*, 132 S. Ct. 2455, 183 L. Ed. 2d 407 (2012) and its progeny was decided, then this may conflict with, rather than support the ineffectiveness claim discussed above. Due to the contents of the experts' declarations regarding the recent nature of the studies on late adolescents; and being the first to official conclude that this age period has diminished criminal culpability, this evidence is distinct from the reports Mr. Moody relied upon in support of his ineffectiveness of counsel claim.

*Id.*

After reviewing Moody's objection and explanation, it appears that he is claiming that his prior claim and his new claim are distinct because they are based on different evidence. Perhaps that is true, but on a more fundamental level, it appears that Moody's new claim is different from his old claim because it does not appear to be an ineffective assistance of counsel claim. In this regard, there is only one portion of Moody's motion to stay where he describes the claim he is going to assert in his new PCRA petition, and when he does so, he states it is "a claim that the mandatory [life without the possibility of parole] sentence imposed upon him as an adolescent with diminished culpability is unconstitutional for being both cruel and/or unusual, inter alia, under the state and federal constitutions [sic] which is cognizable under 42 Pa. C.S. § 9543(a)(2)(vii) as a challenge to the legality of the sentence." Mot. for a Stay and Abeyance to Present Claims in St. Ct. for the Purpose of Appropriate Exhaustion ("Mot.") at 2–3, Doc. No. 10. At no point in this recitation of his new claim does he mention the ineffectiveness of counsel. Thus, it appears that he is attempting to raise a standalone constitutional violation regarding the legality of his sentence. If this is true, Judge Hey did not accurately describe this claim.

As an additional point, despite Moody's apparent claim to the contrary, he has seemingly **not** raised this constitutional attack on his sentence in his habeas petition. The only time he mentions his age-related, diminished culpability claims are in "Ground Six" of his habeas petition, *see* Pet. at ECF p. 13. "Ground Six" is couched as ineffective assistance of counsel claims, and not standalone constitutional claims. A claim that counsel was ineffective for failing to assert a claim relating to his sentence is not the same as asserting an independent claim that the sentence was unconstitutional, even if the merits of the underlying claim relating to the sentence would be considered as part

5

of the ineffective assistance of counsel analysis. Therefore, it would appear that upon exhaustion of his claim in the state court, Moody will need to move to amend his instant habeas petition if he desires to assert this new constitutional claim relating to his sentence as part of these habeas proceedings.

With regard to Moody's final objection, he claims that Judge Hey inaccurately indicated that he had claimed that certain evidentiary material relating to his new PCRA claim was taken from his prison cell during the pendency of his first PCRA petition. *See* Objs. at ECF p. 6. In the report and recommendation, Judge Hey did state that Moody "claims that this [evidentiary] material was taken from his prison cell during the pendency of his first PCRA petition." R. & R. at ECF p. 5. Although not referenced by Moody, Judge Hey also describes Moody's claim as one where he "alleges that prison officials 'confiscated and withheld documents' relevant to the claim during the litigation of his first PCRA petition." *Id.* at ECF p. 8.

Moody is correct in pointing out that he did not state in his motion to stay and abey that prison officials took items from his prison cell. Instead, he only claims that "PADOC officials confiscated and withheld documents containing facts unknown to him that were material to his, then pending, first timely-filed PCRA petition in violation of his constitutional rights to due process and access to the court." Mot. at 2. Although it is a reasonable interpretation of Moody's statement that prison officials would have confiscated any documents from Moody's cell, he does not actually state that fact. As such, and even though Judge Hey's statement has no bearing on this case, the court will sustain the objection insofar as Judge Hey stated that the evidentiary materials were confiscated from Moody's cell.

[2] In this motion, Moody seeks a court order directing counsel for the respondents to adopt an alternative service procedure purportedly followed by the Pennsylvania Office of Attorney General by which they will e-mail legal filings to the respective state correctional institution's "legal liaison", who then delivers the documents by hand to the prisoner and provides a signed statement confirming the exchange. *See* Mot. to Direct Resp'ts to Use an Alternative Service Process Via Hand Delivery by PA DOC Officials at ECF p. 2, Doc. No. 25. He claims that the court should mandate that the respondents follow this process due to the mail delay by which he has received legal filings by the respondents. *See id.*

The court recognizes that, especially during the COVID-19 pandemic, the delivery of mail has often been significantly delayed. Nonetheless, the court has no knowledge of whatever arrangement the Pennsylvania Office of Attorney General has with the Pennsylvania Department of Corrections relating to service of legal documents. At this point, the court cannot conclude that Moody's rights have been adversely affected or that he has suffered any prejudice through any delays in mailing in this case. To the extent that there are issues with the mail, and those issues are not caused by Moody, he can always file an appropriate motion with the court seeking additional time due to any delays with the mail. Accordingly, this motion is denied.